**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. ___________________________**

WILLIS ELECTRIC CO., LTD.,

Plaintiff,

v. **JURY TRIAL DEMANDED**

KING OF CHRISTMAS INC.,

Defendant.

**COMPLAINT**

Plaintiff Willis Electric Co., Ltd. (Willis Electric), for its Complaint against Defendant King of Christmas Inc. (King of Christmas), alleges as follows:

**JURISDICTION AND VENUE**

1. This is an action for infringement of United States Patent Nos. 8,454,186 (the ’186 patent) and 8,454,187 (the ’187 patent) (collectively, the Patents-in-Suit), arising under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281.

2. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

3. This Court has personal jurisdiction over King of Christmas because, on information and belief, King of Christmas conducts substantial business in Florida and in this District, maintains or has maintained business operations and places of business in Miami-Dade County, and has committed acts of patent infringement in this District by, among other things, offering to sell, selling, distributing, and/or causing the sale and distribution of infringing pre-lit artificial Christmas trees in this District.

4. Venue is proper in this District under 28 U.S.C. § 1400(b). King of Christmas is a Delaware corporation. On information and belief, King of Christmas has committed acts of infringement in this District and has a regular and established place of business in this District. King of Christmas has identified business addresses in Miami-Dade County, including 70 NW 73rd Street, Miami, Florida 33150, 407 Lincoln Road, Suite 503, Miami Beach, Florida 33139, and 2045 Biscayne Boulevard, 115, Miami, Florida 33137. King of Christmas has also directed sales and offers for sale of the accused products to customers in this District.

5. The Miami Division is an appropriate division because, on information and belief, acts and business activities giving rise to this action occurred in Miami-Dade County.

## THE PARTIES

6. Willis Electric is a Taiwanese company with a principal place of business at 8F, No. 310, Sec. 4, Zhongxiao E. Rd., Taipei 10694, Taiwan.

7. Willis Electric is a family-owned business founded in 1969. Willis Electric develops, manufactures, and sells decorative lighting products and artificial Christmas trees, including pre-lit artificial trees incorporating its patented One Plug Tree technology.

8. King of Christmas is a corporation organized under the laws of Delaware. On information and belief, King of Christmas markets and sells artificial Christmas trees throughout the United States, including in Florida and this District, and has or has had a principal place of business in this District. Its president and director is David Lakein, who on information and belief resides in this District as well.

## BACKGROUND

9. Before Willis Electric's One Plug Tree invention, assembling a pre-lit artificial Christmas tree generally required consumers to mechanically assemble multiple tree sections and

then locate and connect separate electrical cords or light-string plugs between the sections. This process could be frustrating and time-consuming for consumers.

10. Johnny Chen, an inventor and the General Manager of Willis Electric, developed a modular pre-lit artificial tree that creates mechanical and electrical connections between tree sections as the sections are assembled, through internal coaxial trunk connectors. This design permits the tree sections to be assembled and electrically connected without separately plugging light strings between sections, regardless of the particular rotational orientation of each section.

11. In September 2010, Johnny Chen filed the first United States patent application directed to Willis Electric's One Plug Tree technology. Willis Electric introduced the One Plug Tree to the market in 2011.

12. The '186 patent, titled "Modular Lighted Tree with Trunk Electrical Connectors," issued on June 4, 2013. Johnny Chen is the named inventor. A copy of the '186 patent is attached to this complaint as Exhibit A.

13. Willis Electric is the assignee and owner of all right, title, and interest in the '186 patent, including the right to sue for infringement and recover damages.

14. The '187 patent, titled "Modular Lighted Tree," also issued on June 4, 2013. Johnny Chen is the named inventor. A copy of the '187 patent is attached to this complaint as Exhibit B.

15. Willis Electric is the assignee and owner of all right, title, and interest in the '187 patent, including the right to sue for infringement and recover damages.

16. The '186 and '187 patents claim, among other things, modular lighted artificial trees in which separate tree sections include trunk portions and light strings and are mechanically and electrically coupled through trunk-based coaxial connectors, allowing connections that can be made independent of rotational orientation about the tree's vertical axis.

17. Willis Electric's One Plug Trees were favorably received by the market and sold at several retailers in the United States and elsewhere after their introduction, achieving considerable commercial success.

18. After issuance of its '186 and '187 patents, Willis Electric marked patent-embodying One Plug Trees in compliance with 35 U.S.C. § 287(a).

19. Since Willis Electric's introduction of the One Plug Tree, competitors have adopted infringing designs to compete in the artificial Christmas tree field.

20. The validity of the '186 and '187 patents has been repeatedly challenged and sustained. In ex parte reexaminations and *inter partes* review proceedings, the United States Patent and Trademark Office confirmed the patentability of multiple claims of the '186 and '187 patents, like claim 15 of the '186 patent and claim 4 of the '187 patent.

21. In prior litigation against Polygroup, the world's largest manufacturer of artificial Christmas trees, a jury found that Polygroup willfully infringed claim 15 of the '186 patent through its sales of infringing QuickSet Trees, and that claim 15 was not invalid. The resulting judgment, including prejudgment interest, exceeded $71 million, and the Federal Circuit affirmed the infringement, validity, and damages determinations. Polygroup ultimately paid Willis Electric more than $79.5 million in satisfaction of the judgment.

22. Claim 15 of the '186 patent depends from claim 10. Claim 10 is directed to a lighted artificial tree with first and second tree portions, each having a trunk body, trunk connector, branches, and a light string, where coupling the trunk portions along a common vertical axis creates both a mechanical and an electrical connection inside the tree independent of rotational orientation. Claim 15 further requires that the trunk connectors of the first and second tree portions form coaxial trunk connectors.

23. Claims of the ’187, including claim 4, patent similarly are directed to a lighted artificial tree having first and second tree portions with trunk portions, branches, light strings, trunk electrical connectors, and trunk wiring assemblies, with the tree portions mechanically and electrically connectable about a central vertical axis and with electrical connections made independent of multiple rotational orientations, where the trunk connectors are coaxial or have coaxial electrical contact sets.

**KING OF CHRISTMAS’S ACCUSED POWER POLE TREES**

24. King of Christmas markets and sells numerous pre-lit artificial Christmas trees equipped with a feature it calls a “Power Pole” or “Quick Set Power Pole” (collectively, the “Accused Products”).

25. King of Christmas promotes the Power Pole as an “innovative” feature that eliminates the need for the manual stringing lights and that provides for connection of the pre-lit sections of the tree “allowing power to flow from the base to the top . . . As you stack the sections, the lights automatically illuminate, saving you time and frustration.”

26. King of Christmas similarly touts the benefits of this technology on its website. Below is a depiction of a webpage from the King of Christmas website that touts the quick setup with Power Poles:

## Assembly Improvements: Quick Setup with Power Poles and Tool-Free Designs

Everyone out there who wants to spend hours putting up your Christmas tree, raise your hand! No takers? Of course, nobody wants to spend hours assembling a Christmas tree, especially when the busy holiday season is under way. That's why King of Christmas has introduced several assembly improvements to make the process as quick and stress-free as possible.

**Quick Set Power Pole:**

- *Simplified Lighting:* The quick set power pole eliminates the need for the manual stringing of lights. The pre-lit sections of the tree are connected through the center pole, allowing power to flow from the base to the top.
- *Automatic Illumination:* As you stack the sections, the lights automatically illuminate, saving you time and frustration.
- *Effortless Setup:* The quick set power pole simplifies the assembly process, making it easier and quicker to set up your tree and get into the holiday spirit.

**Tool-Free Assembly:**

- *Convenient Design:* Our trees are designed with tool-free assembly, which means you don't need any special equipment to put them together.
- *Hinged Branches:* The branches are often hinged and can be easily unfolded and shaped, reducing the setup time and complexity.
- *Simplified Process:* Simply attach the sections, and your tree is ready to decorate!

These user-friendly assembly features are ideal for anyone who wants to simplify their holiday preparations. With King of Christmas, you can spend less time assembling your tree and more time enjoying the festivities.

27. King of Christmas's Buyer's Guide likewise depicts a consumer placing one pre-lit section onto another and describes the "Powerpole" feature as allowing the next section to light automatically after it is placed on top of the preceding section. The following is a snapshot from a King of Christas Buyer's Guide:




28. An exemplary Accused Product is the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights. The following are depictions of this

example King of Christmas product, including a picture of the trunk connectors in the "Power Pole" on the product:






29. King of Christmas has offered this 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights and other pre-lit trees with the Power Pole feature for sale in the United States.

30. King of Christmas's own product photographs, assembly instructions, and instructional video show that the Accused Products use separate pre-lit tree sections having trunk portions, branches, and light strings, and that the sections are assembled along a common vertical axis.

31. King of Christmas's materials further show that the electrical connection between adjacent tree sections is made through electrical connectors located within the trunk or center pole when one section is placed on another.

32. King of Christmas's own photographs depict mating concentric or coaxial electrical contacts at the ends of the Power Pole trunk sections.

33. King of Christmas instructs customers to assemble the Accused Products by inserting one tree section into another and teaches that the lights will illuminate automatically when the Power Pole sections are joined. Those instructions cause and encourage customers to use the Accused Products in the infringing manner for which they are designed.

**NOTICE TO KING OF CHRISTMAS AND CONTINUED INFRINGEMENT**

34. On June 23, 2026, Willis Electric, sent King of Christmas a detailed written notice of infringement addressed to David Lakein at King of Christmas's Miami Beach and Miami addresses and to King of Christmas's registered agent in Delaware (the "June 23 Notice Letter").

35. The June 23 Notice Letter identified the '186 patent, described Willis Electric's One Plug Tree patent portfolio including the '187 patent, explained the prior Polygroup infringement verdict and judgment, identified King of Christmas's Power Pole products as infringing products, and demanded that King of Christmas cease and desist from manufacture, sale, offer for sale, and importation of infringing pre-lit artificial Christmas trees.

36. The June 23 Notice Letter included a detailed claim chart mapping King of Christmas's Power Pole design to each limitation of claim 15 of the '186 patent, including the coaxial trunk-connector limitation.

37. The June 23 Notice Letter also identified the '187 patent as part of Willis Electric's One Plug Tree patent portfolio and informed King of Christmas that its Power Pole products infringe Willis Electric's One Plug Tree Patents.

38. Willis Electric offered King of Christmas an opportunity to resolve its past infringement through a release and requested an accounting of infringing products made, sold, offered for sale, imported, or distributed on or after June 23, 2020.

39. Despite this actual and detailed notice, King of Christmas has continued, and on information and belief continues, to advertise, offer for sale, sell, distribute, and/or cause the distribution of pre-lit artificial Christmas trees using the accused Power Pole technology.

40. King of Christmas's continued infringement after receiving the June 23 Notice Letter is knowing and deliberate. King of Christmas has continued its accused conduct despite specific notice of the Patents-in-Suit, identification of the accused technology, an element-by-element claim chart for claim 15 of the '186 patent, and a demand to cease infringement or obtain a license.

**COUNT I – INFRINGEMENT OF THE '186 PATENT**

41. Willis Electric realleges and incorporates by reference the allegations of paragraphs 9-40.

42. Willis Electric owns all right, title, and interest in the '186 patent, including the right to sue for infringement and recover damages.

43. King of Christmas has directly infringed and continues to directly infringe one or more claims of the '186 patent, including at least claims 15 and 29 in violation of 35 U.S.C. § 271(a), by making, using, offering to sell, selling, and/or importing the Accused Products in the United States without authorization.

44. Claim 10 of the '186 patent, upon which Claim 15 depends, recites "A lighted artificial tree." Defendants' Accused Products, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, are lighted artificial trees.

45. Claim 10 of the '186 patent, upon which Claim 15 depends, also recites "a first tree portion including a first trunk portion, a first plurality of branches joined to the first trunk portion, and a first light string." Defendants' Accused Products, including, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a first tree portion including a first trunk portion, a first plurality of branches joined to the first trunk portion, and a first light string.

46. Claim 10 of the '186 patent, upon which Claim 15 depends, also recites "the first trunk portion having a first trunk body and a trunk connector, at least a portion of the trunk connector housed within the first trunk body and electrically connected to the first light string." Defendants' Accused Products, including the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a first trunk portion having a first trunk body and a trunk connector, at least a portion of the trunk connector housed within the first trunk body and electrically connected to the first light string.

47. Claim 10 of the '186 patent, upon which Claim 15 depends, also recites "a second tree portion including a second trunk portion, a second plurality of branches joined to the second trunk portion, and a second light string." Defendants' Accused Products, including, for example,

the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a second tree portion including a second trunk portion, a second plurality of branches joined to the second trunk portion, and a second light string.

48. Claim 10 of the ’186 patent, upon which Claim 15 depends, also recites “the second trunk portion having a trunk body and a trunk connector, at least a portion of the trunk connector housed within the second trunk portion and electrically connected to the second light string.” Defendants’ Accused Products, including, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a second trunk portion having a trunk body and a trunk connector, at least a portion of the trunk connector housed within the second trunk portion and electrically connected to the second light string.

49. Claim 10 of the ’186 patent, upon which Claim 15 depends, also recites “wherein the second tree portion is mechanically and electrically connectable to the first tree portion by coupling a lower end of the second trunk body to an upper end of the first trunk body along a common vertical axis at a rotational orientation of the first trunk portion relative the second trunk portion about the common vertical axis, thereby causing the trunk connector of the first trunk portion to make an electrical connection with the trunk connector of the second trunk portion within an interior of the lighted artificial tree, the electrical connection being made independent of the rotational orientation of the first trunk portion relative the second trunk portion about the common vertical axis.” Defendants’ Accused Products, including, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a second tree portion that is mechanically and electrically connectable to the first tree portion by coupling a lower end of the second trunk body to an upper end of the first trunk body along a common vertical axis at a rotational orientation of the first trunk portion relative the second

trunk portion about the common vertical axis, thereby causing the trunk connector of the first trunk portion to make an electrical connection with the trunk connector of the second trunk portion within an interior of the lighted artificial tree, the electrical connection being made independent of the rotational orientation of the first trunk portion relative the second trunk portion about the common vertical axis.

50. The Accused Products are lighted artificial trees with first and second tree portions, each including a trunk portion, branches, and a light string. The trunk portions include electrical connectors housed at least in part within the trunk bodies and electrically connected to the respective light strings.

51. When adjacent sections of the Accused Products are stacked along the common vertical axis of the tree, the lower end of one trunk body couples with the upper end of another trunk body, mechanically joining the tree sections and causing the internal trunk connectors to make an electrical connection that powers the lighting on the upper section.

52. The Power Pole electrical connection is made regardless of whichever particular rotational orientation of the adjoining trunk portions about the common vertical axis the portions are connected.

53. The Power Pole trunk connectors shown in King of Christmas's own materials are coaxial trunk connectors. Accordingly, the Accused Products practice the additional limitation of claim 15 of the '186 patent, which recites "wherein the trunk connectors of the first and second tree portions form coaxial trunk connectors."

54. Example parts or portions of King of Christmas Accused Products that meet each limitation of claim 15 of the '186 patent are further detailed and/or depicted in the chart attached as Exhibit C to this complaint.

55. King of Christmas also actively induces infringement of at least claims 15 and 29 of the ’186 patent under 35 U.S.C. § 271(b). King of Christmas sells Accused Products to retailers for further sale to end-user customers and/or directly to end user customers for use in a manner that infringes one or more claims of the ’186 patent. King of Christmas provides assembly instructions, Buyer’s Guide materials, and instructional videos that direct customers to assemble and use the Accused Products in the manner that infringes. At least since the June 23 Notice Letter, King of Christmas has had actual knowledge of the ’186 patent and actual knowledge that the instructed use constitutes infringement.

56. King of Christmas’s infringement has caused and will continue to cause damage to Willis Electric. Willis Electric is entitled to recover damages adequate to compensate for the infringement, in no event less than a reasonable royalty, together with interest and costs under 35 U.S.C. § 284.

57. Unless enjoined, King of Christmas’s ongoing infringement will continue to cause harm to Willis Electric for which there is no adequate remedy at law.

58. No later than June 23, 2026, King of Christmas had actual knowledge of the ’186 and ’187 patents, actual knowledge that Willis Electric accused its Power Pole products of infringement, and detailed notice of how the accused Power Pole design satisfies claim 15 of the ’186 patent.

59. The June 23 Notice Letter explained the patented One Plug Tree technology, identified specific King of Christmas products and marketing materials, included an element-by-element claim chart for claim 15 of the ’186 patent, described the prior adjudication sustaining claim 15 and finding infringement by a materially similar competing design, demanded cessation of infringement, and offered King of Christmas an opportunity to take a license.

60. After receiving that notice, King of Christmas continued its accused conduct and did not cease the ongoing sale, offer for sale, marketing, and distribution of Power Pole products.

61. King of Christmas's continued infringement after receiving specific notice and a detailed infringement analysis is knowing, deliberate, and egregious conduct warranting enhanced damages under 35 U.S.C. § 284.

62. King of Christmas's post-notice conduct also supports a finding that this is an exceptional case under 35 U.S.C. § 285 and an award of Willis Electric's reasonable attorneys' fees.

**COUNT II – INFRINGEMENT OF THE '187 PATENT**

63. Willis Electric realleges and incorporates by reference the allegations of paragraphs 9-40.

64. Willis Electric owns all right, title, and interest in the '187 patent, including the right to sue for infringement and recover damages.

65. King of Christmas has directly infringed and continues to directly infringe one or more claims of the '187 patent, including at least claim 4, in violation of 35 U.S.C. § 271(a), by making, using, offering to sell, selling, and/or importing the Accused Products in the United States without authorization.

66. Claim 1 of the '187 patent, upon which Claim 4 depends, recites "A lighted artificial tree." Defendants' Accused Products, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, are lighted artificial trees.

67. Claim 1 of the '187 patent, upon which Claim 4 depends, also recites "a first tree portion including a first trunk portion, a first plurality of branches joined to the first trunk portion, and a first light string affixed to a portion of the first plurality of branches." Defendants' Accused

Products, including, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a first tree portion including a first trunk portion, a first plurality of branches joined to the first trunk portion, and a first light string affixed to a portion of the first plurality of branches.

68. Claim 1 of the '187 patent, upon which Claim 4 depends, also recites "the first trunk portion having a first trunk wall defining a first trunk interior, a first trunk electrical connector and a first trunk wiring assembly, the first trunk electrical connector including a first electrical contact and a second electrical contact, the first trunk wiring assembly electrically connectable to the first light string and the first trunk electrical connector, and wherein at least a portion of the first trunk wiring assembly is located within the first trunk interior." Defendants' Accused Products, including the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a first trunk portion having a first trunk wall defining a first trunk interior, a first trunk electrical connector and a first trunk wiring assembly, the first trunk electrical connector including a first electrical contact and a second electrical contact, the first trunk wiring assembly electrically connectable to the first light string and the first trunk electrical connector, and wherein at least a portion of the first trunk wiring assembly is located within the first trunk interior.

69. Claim 1 of the '187 patent, upon which Claim 4 depends, also recites "a second tree portion including a second trunk portion, a second plurality of branches joined to the second trunk portion, and a second light string affixed to a portion of the second plurality of branches." Defendants' Accused Products, including, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a second tree portion

including a second trunk portion, a second plurality of branches joined to the second trunk portion, and a second light string affixed to a portion of the second plurality of branches.

70. Claim 1 of the ’187 patent, upon which Claim 4 depends, also recites “the second trunk portion having a second trunk wall defining a second trunk interior, a second trunk electrical connector and a second trunk wiring assembly, the second trunk electrical connector including a first electrical contact and a second electrical contact, the second trunk wiring assembly electrically connectable to the second lighting string and the second trunk electrical connector, and wherein at least a portion of the second wiring assembly is located within the second trunk interior.” Defendants’ Accused Products, including, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a second trunk portion having a second trunk wall defining a second trunk interior, a second trunk electrical connector and a second trunk wiring assembly, the second trunk electrical connector including a first electrical contact and a second electrical contact, the second trunk wiring assembly electrically connectable to the second lighting string and the second trunk electrical connector, and wherein at least a portion of the second wiring assembly is located within the second trunk interior.

71. Claim 1 of the ’187 patent, upon which Claim 4 depends, also recites “wherein the second tree portion is mechanically coupleable to the first tree portion about a central vertical axis, and the second tree portion is electrically connectable to the first tree portion such that a portion of the first trunk electrical connector of the first trunk portion contacts a portion of the second trunk electrical connector of the second trunk portion when the first tree portion and the second tree portion are mechanically coupled, and the second electrical contact of the first trunk connector makes an electrical connection with the second electrical contact of the second trunk connector at a point along the central vertical axis, and the first electrical contact of the trunk connector of the

first tree portion makes an electrical connection with the first electrical contact of the trunk connector of the second tree portion, thereby creating an electrical connection between the first wiring assembly and the second wiring assembly." Defendants' Accused Products, including, for example, the 6.5-foot Cypress Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a second tree portion that is mechanically coupleable to the first tree portion about a central vertical axis, and the second tree portion is electrically connectable to the first tree portion such that a portion of the first trunk electrical connector of the first trunk portion contacts a portion of the second trunk electrical connector of the second trunk portion when the first tree portion and the second tree portion are mechanically coupled, and the second electrical contact of the first trunk connector makes an electrical connection with the second electrical contact of the second trunk connector at a point along the central vertical axis, and the first electrical contact of the trunk connector of the first tree portion makes an electrical connection with the first electrical contact of the trunk connector of the second tree portion, thereby creating an electrical connection between the first wiring assembly and the second wiring assembly.

72. Claim 1 of the '187 patent, upon which Claim 4 depends, also recites "wherein the lower end of the second trunk portion is configured to couple the upper end of the first trunk portion in at least four different rotational orientations of the first trunk portion relative the second trunk portion about the central vertical axis, and the electrical connection between the first electrical contacts of the first and second tree portions and the electrical connection between the second electrical contacts of the first and second tree portions are made independent of the rotational orientations of the first trunk portion relative to the second trunk portion about the central vertical axis when the lower end of the second trunk portion is coupled to the upper end of the first trunk portion." Defendants' Accused Products, including, for example, the 6.5-foot Cypress

Spruce Artificial Christmas Tree with 1000 Warm White & Multi-Color LED Lights, include a second tree portion with a lower end of the second trunk portion that is configured to couple the upper end of the first trunk portion in at least four different rotational orientations of the first trunk portion relative the second trunk portion about the central vertical axis, and the electrical connection between the first electrical contacts of the first and second tree portions and the electrical connection between the second electrical contacts of the first and second tree portions are made independent of the rotational orientations of the first trunk portion relative to the second trunk portion about the central vertical axis when the lower end of the second trunk portion is coupled to the upper end of the first trunk portion.

73. The Accused Products include each limitation of claim 1 of the ’187 patent, including first and second pre-lit tree portions with respective trunk portions, branches, and light strings; trunk interiors containing trunk electrical connectors and trunk wiring assemblies; and trunk electrical connectors having first and second electrical contacts.

74. When adjacent Accused Product sections are mechanically coupled about a central vertical axis, corresponding contacts of the trunk connectors make electrical connections within the tree, including a contact point along the central vertical axis, thereby electrically connecting the wiring assemblies and energizing the light strings.

75. The adjoining trunk portions of the Accused Products can be coupled in at least four rotational orientations about the central vertical axis, and the electrical connection between corresponding trunk contacts is made independent of the rotational orientation of the adjoining sections.

76. The Power Pole trunk electrical connectors shown in King of Christmas’s own materials have coaxial electrical contact sets. Accordingly, the Accused Products practice the

additional limitation of claim 4 of the ’187 patent, which recites “wherein the first trunk electrical connector of the first portion includes a first coaxial electrical contact set and the trunk connector of the second trunk portion includes a second coaxial electrical contact set such that the electrical connection between the first wiring assembly and the second wiring assembly comprises an electrical connection between the first coaxial electrical contact set and the second coaxial electrical contact set.”

77. King of Christmas also actively induces infringement of at least claim 4 of the ’187 patent under 35 U.S.C. § 271(b). King of Christmas sells Accused Products to retailers for further sale to end-user customers and/or directly to end user customers for use in a manner that infringes one or more claims of the ’187 patent. King of Christmas provides assembly instructions, Buyer’s Guide materials, and instructional videos that direct customers to assemble and use the Accused Products in the manner that infringes. At least since the June 23 Notice Letter, King of Christmas has had actual knowledge of the ’187 patent and actual knowledge that the instructed use constitutes infringement.

78. King of Christmas’s infringement has caused and will continue to cause damage to Willis Electric. Willis Electric is entitled to recover damages adequate to compensate for the infringement, in no event less than a reasonable royalty, together with interest and costs under 35 U.S.C. § 284.

79. Unless enjoined, King of Christmas’s ongoing infringement will continue to cause harm to Willis Electric for which there is no adequate remedy at law.

80. No later than June 23, 2026, King of Christmas had actual knowledge of the ’186 and ’187 patents, actual knowledge that Willis Electric accused its Power Pole products of

infringement, and detailed notice of how the accused Power Pole design satisfies claim 15 of the ’186 patent.

81. The June 23 Notice Letter explained the patented One Plug Tree technology, identified specific King of Christmas products and marketing materials, included an element-by-element claim chart for exemplary infringement of the Patents-in-Suit, demanded cessation of infringement, and offered King of Christmas an opportunity to take a license.

82. After receiving that notice, King of Christmas continued its accused conduct and did not cease the ongoing sale, offer for sale, marketing, and distribution of Power Pole products.

83. King of Christmas’s continued infringement after receiving specific notice and a detailed infringement analysis is knowing, deliberate, and egregious conduct warranting enhanced damages under 35 U.S.C. § 284.

84. King of Christmas’s post-notice conduct also supports a finding that this is an exceptional case under 35 U.S.C. § 285 and an award of Willis Electric’s reasonable attorneys’ fees.

**DEMAND FOR JUDGMENT**

WHEREFORE, Willis Electric respectfully requests that the Court enter judgment in its favor and against King of Christmas as follows:

A. Finding that King of Christmas has infringed the ’186 patent and the ’187 patent;

B. Finding that King of Christmas’s infringement has been willful;

C. Entering preliminary and permanent injunctive relief, as warranted by the evidence and applicable law, enjoining King of Christmas and those acting in active concert or participation with it from further infringement of the Patents-in-Suit;

D. Awarding Willis Electric damages adequate to compensate for King of Christmas's infringement, in no event less than a reasonable royalty, together with supplemental damages for infringement occurring after any damages period presented at trial;

E. Enhancing damages up to three times under 35 U.S.C. § 284 based on King of Christmas's willful infringement;

F. Awarding prejudgment and post-judgment interest and costs as permitted by law;

G. Declaring this case exceptional under 35 U.S.C. § 285 and awarding Willis Electric its reasonable attorneys' fees;

H. Ordering an accounting of King of Christmas's infringing sales, offers for sale, imports, and distributions of the Accused Products; and

I. Awarding such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b) and the Seventh Amendment to the United States Constitution, Willis Electric demands a trial by jury on all issues so triable.

Dated: August 18, 2026

**Respectfully submitted,**

**TRIPP SCOTT, P.A.**
110 SE 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Tel. 954-525-7500

By: ***/s/ Paul O. Lopez***
**PAUL O. LOPEZ, ESQ.**
Fla. Bar #983314
pol@trippscott.com

sxc@trippscott.com
**SETH J. DONAHOE, ESQ.**
Fla. Bar #1004133
sjd@trippscott.com
eservice@trippscott.com
sgc@trippscott.com
cab@trippscott.com
**DALIANETT CORRALES**
Florida Bar #1038612
dxc@trippscott.com
stl@trippscott.com

***Local Counsel for Plaintiff Willis Electric Co., Ltd***
**ROBINS KAPLAN LLP**
Patrick M. Arenz (MN Bar. No. 0386537)
(PHV Application Forthcoming)
Emily E. Niles (MN Bar No. 0396631)
(PHV Application Forthcoming)
Brenda L. Joly (MN Bar. No. 0386791)
(PHV Application Forthcoming)
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Phone: 612-349-8500
Fax: 612-339-4181
parenz@RobinsKaplan.com
eniles@RobinsKaplan.com
bjoly@RobinsKaplan.com

***Trial Counsel for Plaintiff Willis Electric Co., Ltd***